# United States Court of Appeals

*for the*

# First Circuit

Case No. 21-1146

JONATHAN MONSARRAT,

*Plaintiff-Appellant,*

v.

RON NEWMAN,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS, THE RICHARD G. STEARNS,
CASE NO. 1:20-CV-10810-RGS,

## BRIEF FOR PLAINTIFF APPELLANT JONATHAN MONSARRAT

RICHARD A. GOREN
BBO #203700
THE LAW OFFICE OF RICHARD GOREN
29 Crafts Street, Suite 500
Newton, Massachusetts 02458
(617) 933-9494
rgoren@richardgorenlaw.com

RYAN D. SULLIVAN
BBO #660696
SULLIVAN LEGAL, PC
29 Farragut Road, Suite E
South Boston, Massachusetts 02127
(617) 410-6340
ryan@sullivan-legal.com

*Attorneys for Plaintiff-Appellant*

# <u>CORPORATE DISCLOSURE STATEMENT AND STATEMENT<br>OF FINANCIAL INTEREST</u>

Pursuant to Fed. R. App. P. 26.1, Plaintiff-Appellant Jonathan Monsarrat makes the following disclosure:

1) For non-governmental corporate parties please list all parent corporations:

   **None.**

2) For non-governmental corporate parties please list all publicly held companies that own 10% or more of the party's stock:

   **None.**

3) If there is a publicly held corporation which is not a party to the proceeding before this Court but which has a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests.

   **None.**

4) In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list: 1) the debtor, if not identified in the case caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is active participant in the bankruptcy proceeding. If the debtor or trustee is not participating in the appeal, this information must be provided by appellant.

   **Not a Bankruptcy Proceeding.**

<u>/s/ Richard A. Goren</u>

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................. iii

I.      JURISDICTIONAL STATEMENT ................................................1

II.     STATEMENT OF THE ISSUES ....................................................1

III.    STATEMENT OF THE CASE .......................................................4

        A.      Factual Background.............................................................5

        B.      Procedural History..............................................................7

                1.      The Motion to Dismiss FAC....................................11

IV.     SUMMARY OF ARGUMENT ......................................................17

V.      ARGUMENT................................................................................20

        A.      Standard of Review ...........................................................20

        B.      Rule 12(b)(6) Standard.......................................................20

        C.      Immunity Under the CDA..................................................22

                1.      The State Law Claim ..............................................22

                2.      Section 230 presents an affirmative defense not established
                        on the 12(b)(6) record ............................................24

                3.      The District Court's Errors of law ..........................32

        D.      Copyright Infringement Claim...........................................40

                1.      First Statutory Factor Purpose and Character of the Use .........44

                2.      Second statutory factor "nature of the copyrighted work".......47

3.    Third statutory factor: amount and substantiality of use ..........48

4.    Fourth statutory factor: effect on the market or the value of the copyright ...............................................................................48

5.    Propriety of Newman's Conduct cannot be determined on a 12(b)(6) record ......................................................................50

VI.    CONCLUSION ..............................................................................51

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases:**

*Appleby v. Daily Hampshire Gazette*,
　　395 Mass. 32, 478 N.E.2d 721 (Mass. 1985) ........................................ 23, 39

*Atkinson v. McLaughlin*,
　　462 F. Supp. 2d 1038 (D.N.D. 2006) ...........................................................40

*Ayyadurai v. Floor64, Inc.*,
　　270 F. Supp. 3d 343 (D. Mass. 2017)........................................ 12, 14, 37, 38

*Barnes v. Yahoo!, Inc.*,
　　570 F.3d 1096 (9th Cir. 2009) ............................................................... 28, 31

*Campbell v. Acuff-Rose Music, Inc.*,
　　510 U.S. 569 (1994).....................................................................................42

*Damon v. Moore*,
　　520 F.3d 98 (1st Cir. 2008)..........................................................................22

*Doe v. GTE Corp.*,
　　347 F.3d 655 (7th Cir. 2003) ........................................................................32

*Doe v. McMillan*,
　　412 U.S. 306 (1973).....................................................................................24

*Evergreen Partnering Grp., Inc. v. Pactiv Corp.*,
　　720 F.3d 33 (1st Cir. 2013)...........................................................................20

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
　　521 F.3d 1157 (9th Cir. 2008) ............................................................... 24, 29

*Federal Trade Commission v. Accusearch, Inc.*,
　　570 F.3d 1187 (10th Cir. 2009) ............................................................. 27, 30

*Federal Trade Commission v. LeadClick Media, LLC*,
　　838 F.3d 158 (2d Cir. 2016) .................................................................. 25, 29

*Feist Publications, Inc. v. Rural Tel. Service Co.*,
　　499 U.S. 340 (1991).....................................................................................47

*Flynn v. Associated Press*,
　　401 Mass. 776 (1988) ..................................................................................22

iii

*Folsom v. Marsh*,
　　9 F. Cas. 342 (Circuit Court, D. Mass. 1841),
　　1841 US App. LEXIS 468 ............................................................ 47, 49, 50

*Gozlon-Peretz v. United States*,
　　498 U.S. 395 (1991) ..................................................................................26

*Harper & Row, Publishers, Inc. v. Nation Enterprises*,
　　471 U.S. 539 (1985) ......................................................................... *passim*

*Hernández-Miranda v. Empresas Díaz Massó, Inc.*,
　　651 F.3d 167 (1st Cir. 2011) ....................................................................26

*Johnson v. Gordon*,
　　409 F.3d 12 (1st Cir. 2005) .......................................................................40

*Jones v. Dirty World Entertainment Recordings LLC*,
　　755 F.3d 398 (6th Cir. 2014) ....................................... 12, 30, 37, 39

*Jones v. Taibbi*,
　　400 Mass. 786, 512 N.E.2d 260 (Mass. 1987) .............................................24

*Kimzey v. Yelp! Inc.*,
　　836 F.3d 1263 (9th Cir. 2016) ........................................... 29, 37, 39

*Klayman v. Zuckerberg*,
　　753 F.3d 1354 (D.C. Cir. 2014) ........................................... 26, 27

*Ocasio-Hernandez v. Fortuno-Burset*,
　　640 F.3d 1 (1st Cir. 2011) .......................................................................20

*Phelan v. May Dep't Stores Co.*,
　　443 Mass. 52, 819 N.E. 2d 550 (Mass. 2004) ..............................................22

*S. Middlesex Opportunity Council v. Town of Framingham*,
　　752 F. Supp. 2d 85 (D. Mass. 2010) ..............................................................22

*Sony BMG Music Entertainment v. Tenenbaum*,
　　672 F. Supp. 2d 217 (D. Mass. 2009) ................................................... 42, 45

*Stratton Oakmont v. Prodigy Services Co.*,
　　1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995) .........................................27

*The Holy Transfig. Monastery v. Archbishop Gregory*,
　　685 F. Supp. 2d 217 (D. Mass. 2010), *aff'd sub nom*, *Soc'y of the
　　Holy Transfiguration Monastery, Inc. v. Archbishop Gregory*,
　　689 F.3d 29 (1st Cir. 2012)....................................... 41, 45, 48, 50

*Town of Johnston v. Fed. Hous. Fin. Agency*,
    765 F.3d 80 (1st Cir. 2014)...........................................................................20

*United States v. Yellin*,
    272 F.3d 39 (1st Cir. 2001)...........................................................................26

*Universal Communication Systems, Inc. v. Lycos*,
    478 F.3d 413 (1st Cir. 2007)................................................................ *passim*

*Vondra v. Crown Pub. Co.*,
    No. 012199F, 2002 WL 31379948 (Mass. Super. Sept. 12, 2002),
    *aff'd sub nom. Vondra v. Crown Publ'g Co.*, 61 Mass. App. Ct.
    1116, 810 N.E.2d 1291 (2004) .....................................................................23

*Wolsfelt v. Gloucester Times*,
    98 Mass. App. Ct. 321, 155 N.E.3d 737 (2020) .................................... 22, 23

*Zeran v. Am. Online, Inc.*,
    129 F.3d 327 (4th Cir. 1997) ................................................................ 27, 28


**Statutes & Other Authorities:**

17 U.S.C. § 101 ..............................................................................................1

17 U.S.C. § 106(1) ........................................................................................49

17 U.S.C. § 107 ...................................................................................... 21, 41

17 U.S.C. § 107(4) .................................................................................. 48, 49

17 U.S.C. § 410(c) .................................................................................. 14, 40

28 U.S.C. § 1291 .............................................................................................1

28 U.S.C. § 1338 .............................................................................................1

47 U.S.C. § 230............................................................................... *passim*

47 U.S.C. § 230(b)(2)....................................................................................27

47 U.S.C. § 230(c) ........................................................................................25

47 U.S.C. § 230(c)(1)...................................................................... *passim*

47 U.S.C. § 230(f)..........................................................................................25

47 U.S.C. § 230(f)(3) .............................................................................. 25, 28

Fed. R. Civ. P. 8(c)(1) ...........................................................................21

Fed. R. Civ. P. 12(b)(6)................................................................. *passim*

Fed. R. Evid. 201 .......................................................................... 11, 16

Mass. Gen. Laws. C. 260 § 2A ..............................................................22

Merriam-Webster Dictionary ..................................................................26

Restatement (Second) of Torts § 571.......................................................27

Restatement (Second) of Torts § 577A.....................................................23

Restatement (Second) of Torts § 578.......................................... 23, 27, 39

Restatement (Second) of Torts § 581.......................................................27

## I.    JURISDICTIONAL STATEMENT

This is an appeal from a judgment of the United States District Court for the District of Massachusetts (Stearns, J.), entered January 21, 2021.  Addendum ("Add.") 1. The District Court had jurisdiction under 28 U.S.C. § 1338, and the Copyright Act, 17 U.S.C. § 101 *et seq*, and pendent jurisdiction over the state law defamation claim involving the same parties and arising under a common nucleus of operative facts.  In his notice of appeal filed on February 19, 2021 (Appendix ("App.") 129)) Plaintiff-Appellant Jonathan Monsarrat ("Monsarrat") specified an appeal from the "Order Granting Motion to Dismiss for Failure to State a Claim" (Add. 13) entered in accordance with the Memorandum and Order on Defendant's Motion to Dismiss dated January 21, 2021 granting defendant's motion to dismiss." Add. 1.  This Court has jurisdiction under 28 U.S.C. § 1291.

## II.    STATEMENT OF THE ISSUES

1.    Whether application of Section 230 of  the Commmunications Decency Act, 47 U.S.C. § 230, requires dismissal of Monsarrat's defamation claim despite it being uncontested that Newman took no longer actionable defamatory content provided by others to one website, copied it and reposted on another website aimed at a different audience.

2.    Whether the District Court erred in concluding there was no plausible allegation "Newman [had] participated in the creation or development of the

1

allegedly defamatory statements" and hence Newman could not have "acted as an information content provider with respect to the dissemination of the allegedly defamatory statements" where the complaint alleges that after copying the prior LiveJournal.com posts Newman unilaterally determined to republish his compilation of those copies on the Dreamwidth.com website.

3.    Whether on a motion to dismiss the District Court properly dismissed Monsarrat's well pleaded prima facie copyright infringement claim based on Newman's fair use defense, which  presents mixed questions of law and fact without any discovery, much less findings of fact as to Newman's intent, motivation and good faith.

4.    Whether in considering the purported transformative nature of Newman's use, as well as the fact specific inquiry of the equitable purpose and character of that use, the District Court properly found Newman's "reproduction…[on Dreamwidth to have been] created solely for historical and preservationist purposes," where the complaint alleged Newman's use to constitute an integral part of Newman's compaign to defame Monsarrat and where it is undisputed the original content remains preserved on the LiveJournal.com website.

5.    Whether the District Court committed prejudicial error granting Newman judgment on his fair use affirmative defense without requiring Newman to provide some minimal due process detailing or explanation of the  factual

contentions in support of his conclusory, outcome determinative fair use predicates as to his good faith, intent and equitable purposes including his contended "transformative" purpose of preservation and historical archiving.

6. Whether in ruling the second factor, the nature of the copyrighted work, tipped in Newman's favor the District Court, without discovery and further development of the record, properly determined Monsarrat's presumptively valid copyrighted literary work could not reasonably be characterized "as a creative work" where the post evidences Monsarrat's style and mode of constructing sentences and as a matter of law the requisite level of creativity is extremely low.

7. Whether the District Court properly ruled the third factor, extent of copying, neutral upon fnding Newman's "full reproduction" of Monsarrat's work to have been "consistent with historical and preservational purposes," where the verified complaint alleged Newman's unauthorized reproduction constitutued an integral part of Newman's campaign to defame Monsarrat and where it is undisputed the original content remains preserved on the LiveJournal.com website.

8. Whether the District Court properly ruled that the "single most important" fourth factor, was " the effect of the use upon the potential market for or value of the copyrighted work," weighs against Monsarrat because "[t]here is no plausible market for the copyrighted post" where as a matter of law an essential

"value" of a copyright, even one having no market value, includes the exclusive right to preclude reproduction.

### III.  STATEMENT OF CASE

The Plaintiff Jonathan Monsarrat is an MIT graduate and entrepreneur whose reputation, personal relationships and start up business developing an augmented reality video game to be marketed to young people have suffered from false accusations that he had committed despicable crimes.  These accusations were originally published more than ten years ago by a number of largely anonymous members of a discussion group hosted by LiveJournal.com, an interactive internet website.

Defendant Ron Newman was a moderator and participant of that discussion group. Monsarrat's Verified Amended Complaint alleged that in violation of Massachusetts law Newman had republished on Dreamwidth.com, an entirely different website targeted to a different and fresher audience,  a compilation of the prior anonymously published libels.  The verified complaint also alleged that with his posting on the Dreamwidth.com website Newman had unlawfully infringed Monsarrat's registered copyright and had done so as an integral part of Newman's campaign to defame Monsarrat.  On Newman's motion to dismiss, without questioning the plausibility of the sworn allegations stating prima facie claims both for defamation and copyright infringement, and without granting Monsarrat his

duly requested hearing, the District Court (Stearns, J.) nevertheless dismissed Monsarrat's complaint with prejudice.

### A.    Factual Background.

Beginning in early 2010 on the interactive LiveJournal.com website a number of largely anonymous participants in a discussion group posted comments falsely accusing Monsarrat, another user of that website, of despicable crimes, including that he is a pedophile and a sexual predator of young women. App. 8 (FAC ¶¶ 8-9). Newman, himself a user of the LiveJournal.com website, and as a moderator of that discussion group, posted editorial-like comments concerning this smear attack on Monsarrat. App. 10 (FAC ¶ 20).

In August 2012 the United States Copyright Office issued to Monsarrat a certificate of copyright ownership of a two-paragraph literary work that Monsarrat had first published on the LiveJournal.com website in 2010. App. 15 (FAC ¶45); App. 21-23.

In 2013 Monsarrat unsuccessfully sued Newman and other users of the LiveJournal.com website essentially for defamation. App . 8-9 (FAC ¶¶ 11, 12).

To this day those false accusations of despicable crimes published beginning in 2010 by the anonymous LiveJournal.com content providers remain on the LiveJournal.com website. App. 8-9 (FAC ¶¶ 11, 15).

In April 2017 the Russian based owners of the LiveJournal.com website changed the website's terms of service including adding certain restrictions on the anonymity of its users and as to content. App. 7-8 (FAC ¶ 7).  In April 2017 Newman made copies of each and every one of the so-called discussion threads on the LiveJournal.com website, including the several, no-longer actionable, individual false and defamatory statements so originally posted by various anonymous content providers on the LiveJournal.com website.  App. 9, 11 (FAC ¶¶ 16, 22). The threads of content Newman copied included Monsarrat's registered copyrighted work.

At the end of April 2017 as a user of Dreamwidth.com, an entirely different website, Newman published a compilation of the copies he had made of the entire LiveJournal.com thread including the defamatory posts, the wording of which had been both created and then originally published on the LiveJournal.com website by the original anonymous LiveJournal.com website content providers.  The content Newman posted on the Dreamwidth.com website included an unauthorized reproduction of Monsarrat's copyrighted work that he had first published on the LiveJournal.com website.  App. 10, 15 (FAC ¶¶ 20, 45-46).

The Dreamwidth.com website is materially different from the LiveJournal.com website, including for among many other material reasons that it "is aimed at a fundamentally different audience." App. 7, 9-10 (FAC ¶¶ 7, 18, 19).

6

These false accusations of despicable sexual crimes purportedly victimizing young women necessarily intersected with Monsarrat's entrepreneurial effort to develop an augmented reality video game to be marketed to young people of both sexes.  The continuing publication by the several anonymous authors of their libels on the LiveJournal.com website coupled with Newman's 2017 republication of those libelous statements on the Dreamwidth.com website and a fresher time stamp on a Google search of Monsarrat's name understandably are negative factors for potential investors.  App. 10 (FAC ¶21).  In October 2017 one investment firm in declining to invest stated that "we ultimately decided to pass due to the negative press you received in the pas[t] as we have found that this can have an impact on equity crowdfunding raises given their very public nature…". App. 12 (FAC ¶28).

In March 2020, Monsarrat demanded Newman take down the compilation of defamation on Dreamwidth. But Newman refused. App. 14 (FAC ¶¶ 35-36).

## B.    Procedural History.

Monsarrat commenced his civil action against Newman in the United States District Court for the District of Massachusetts on April 28, 2020.  App. 1. On September 29, 2020 Monsarrat filed a first amended verified complaint, consisting of two counts: Count I- Defamation (App. 7-15 (FAC ¶¶ 7-43)) and Count II-Copyright Infringement (App. 15-16 (FAC ¶¶ 44-49)).

Count I Defamation. Monsarrat's verified First Amended Complaint

("FAC") plausibly alleges a prima facie defamation claim against Newman. App.

7-15 (FAC ¶¶7-43). The FAC specifically acknowledges that while he continues to

be harmed thereby Monsarrat cannot, and does not, seek recourse against the

original authors who had posted their libelous screeds on the LiveJournal.com

website. Nor does the FAC reflect any intimation remotely supporting any

plausible inference that any of the several persons who had created the libelous

LiveJournal.com content were responsible for the 2017 republication of that

content on the separate Dreamwidth.com website.

By his 2017 posting on the Dreamwidth.com website, "[Newman]

individually communicated to both the Dreamwidth audience, and others

worldwide via search engine users interested in Monsarrat or considering a

potential investment in Monsarrat's augmented reality interactive video game start

up business to be marketed to young adults of both sexes, that as of, or shortly

after, April 30, 2017:

> (i) "[Monsarrat] is a child "molester,"
>
> (ii) "[Monsarrat] is a sexual predator in our community;"
>
> (iii) "[Monsarrat] has a social rap sheet as long as my arm of sexual
>
> harassment and preying on young women who don't know better;"
>
> (iv) [Monsarrat] "habitually rape[s] strangers;"

(v) [Monsarrat is a] creepy [sic] staulker;"

(vi) "keeping teenagers away from creeps is part of every community's duty;"

(vii) [Monsarrat is a] "statutory raping douchebag;"

(viii) [Monsarrat] "lure[s] teenage girls;"

(ix) [Monsarrat] "repeatedly behave[s] in a predatory fashion;

App. 10-11 (FAC ¶ 21).

Monsarrat's defamation claim is targeted at Newman's individual actions, not as an internet intermediary, but as a user of, and content provider to, the separate Dreamwidth.com website. The FAC alleges that:

"[Newman] so republished on Dreamwidth the no-longer actionable individual LiveJournal anonymous defamatory posts intending to maliciously defame and discredit… [Monsarrat] and with the purpose and effect of having others repeat such false and defamatory statements and thereby further damage …[Monsarrat]'s reputation." (App. 11 (¶22));

"By his actions…[Newman] took ownership of the collection of defamatory speech and his republication on an entirely different website triggered accrual of an entirely new cause of action against him for defamation under Massachusetts law. (App. 11 (¶23));

"As a user of the Dreamwidth website by his republication thereon of speech originally created many years before by numerous anonymous speakers [Newman]:

(i)     was the proximate cause of the alleged wrongdoing; and/or

(ii)    at a minimum materially contributed to its unlawfulness." (App. 11 (¶24));

9

"[Newman] is the legally responsible information content provider of this actionable libel published on Dreamwidth and is not entitled to immunity under the Communications Decency Act, 47 U.S.C. §230." (App. 11 (¶25)); and, that Monsarrat has suffered and continues to suffer harm from Newman's malicious defamation and his continuing efforts on social media to discredit Monsarrat.

App. 11-15 (FAC ¶¶26-43).

Count II, Copyright Infringment. Count II asserted a claim for infringement of Monsarrat's 2012 registered copyright of the two paragraph work he had posted on the LiveJournal.com website. App. 15 (FAC ¶ 45). The FAC does not allege any economic harm attributable to Newman's unathorized use of Monsarrat's two paragraph work posted on the LiveJournal.com website. Rather, alleging that Newman was using his unauthorized reproduction as an integral part of Newman's campaign to defame Monsarrat, the FAC's Count II seeks only an an award of statutory damages under the Copyright Act. App. 16 (FAC ¶ 48).

On November 30, 2020, Newman filed a Motion to Dismiss for Failure to State a Claim along with 21 exhibits referenced as Exhibits A through U (hereinafter the "Motion to Dismiss") and supporting Memorandum. App. 19-50. That same day, Newman filed a Request for Judicial Notice requesting that the Court "deem Exhibits A through U, attached to his Motion to Dismiss as incorporated by reference into the… [FAC] or take judicial notice thereof pursuant

to Federal Rule of Evidence 201, and consider them in deciding the motion to dismiss." App. 51-66.

On December 14, 2020, duly requesting oral argument, Monsarrat filed his Opposition to Motion to Dismiss, and separately an Opposition to Request for Judicial Notice and Motion to Strike. App. 66-98.

By order dated January 21, 2021, without a hearing, the District Court, Stearns, J., granted Newman's Motion to Dismiss and entered Judgment in favor of Newman. Add. 1, 13. On February 19, 2021, Monsarrat timely filed his Notice of Appeal. App. 127.

### 1.     The Motion to Dismiss FAC

Newman filed the Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) only. App. 18.

a. <u>Count I Defamation</u>. As to the  defamation claim Newman did not dispute that the content he had posted on the Dreamwidth.com website was libelous. Rather, Newman sought dismissal on an unpleaded affirmative defense of immunity under Section 230 of the Communications Decency Act.

Newman's motion posited that because he "neither wrote nor solicited" the original LiveJournal.com libelous posts which he admittedly copied and in his words merely "migrat[ed]" to the Dreamwidth.com website and because in doing so he "did not alter their content or give them defamatory character Section 230

11

prohibits treating him as their author for purposes of… [Monsarrat's] claim." App.
19. In his brief Newman elaborated he "did not write …[the statements
complained of and h]is ostensibly wrongful act, providing a home for those
comments with their contents unaltered, was a quintessential editorial function
shielded by Section 230." App. 46.

While mischaracterizing his purported capacity as a neutral internet
intermediary,[1] the claimed affirmative, avoidance defense for his actions as a user
of the Dreamwidth.com website turned on application of Section 230(c)(1), which
provides that "[n]o provider or user of an interactive computer service shall be
treated as the publisher or speaker of any information provided by another
information content provider."

---

[1] In his brief Newman improperly conflated his status as a user who proffers content with an operator of neutral internet platform and its employees who exercise protected editorial functions. App. 45 ("lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions…"), App. 46 (Newman's "ostensibly wrongful act, providing a home [on the Dreamwidth website] for…[the prior anonymous defamatory] comments…was a quintessential editorial function"), App. 46 ("Newman was both a…[LiveJournal.com] moderator and commenter" and Section 230 immunity covers websites "and users equally, including website moderators like Newman"), App. 47 (immaterial "how many times a[…website] publishes information provided by another information content provider"), App. 48 ("an interactive computer provider who merely hosts or republishes defamatory content is protected by Section 230"), App. 49 ("reposting…well within a publisher's traditional editorial functions"), App. 49 (quoting *Ayyadurai* and *Dirty World* "'A website operator cannot be responsible for what makes another party's statement actionable by commenting on that statement post hoc.'") .

In opposing dismissal of the defamation claim Monsarrat contended the fact that Newman had not composed or created the original defamatory content on LiveJournal.com was immaterial.  App. 76.  As a matter of law Monsarrat's 2020 complaint could not, and so explicitly did not, seek to hold Newman liable for the actions of the several anonymous authors who had created, and then originally published, the defamatory content on the LiveJournal.com website.  Nor, his opposition went on, as a matter of law could, or did, Monsarrat's 2020 complaint seek recourse-whether from Newman or anyone else—for any ongoing injury to his personal and business reputation caused by the continuing publication of any content on the LiveJournal.com website.  Rather, in opposition Monsarrat contended his complaint plausibly stated a claim under Massachusetts law against Newman as a user of the Dreamwidth.com website for his voluntary actions in republishing defamatory statements originally posted on a different website.

In opposition Monsarrat essentially contended that as a user of the Dreamwidth.com website Newman was plausibly alleged to have been the operative information content provider of the actionable speech; and that his defamation claim did not treat Newman as the publisher of any content provided by any other user of the Dreamwidth.com website.  Citing the Ninth Circuit's

"material contribution to activity test" and this Court's rulings in *Lycos*,[2] Monsarrat

contended Newman's actions ultimately should be adjudged responsible, in whole

or material part, for what made the 2017 republication of the defamation unlawful.

In dismissing the defamation claim the District Court held that the factual

allegations of Monsarrat's complaint "definitively establish[ed]" Newman's

entitlement to his asserted, but unpleaded, affirmative defense of immunity under

Section 230.  In support of its holding, the District Court cited *Ayyadurai v.*

*Floor64, Inc.*, 270 F. Supp. 3d 343, 368 (D. Mass. 2017) for the proposition that

"[r]epublishing an already-existing user-submitted comment, without altering the

content of that comment, does not materially contribute to its allegedly defamatory

nature."  Add. 11.

b. <u>Count II Copyright Infringement</u>. As to the copyright claim, Newman did

not dispute that the verified FAC plausibly stated a prima facie infringement claim.

Moreover, Newman's documentation of the date of first publication on the

LiveJournal.com website of Monsarrat's  two paragraph work (App. 21-22)

established on the motion to dismiss record the presumptive validity of

Monsarrat's copyright. 17 U.S.C. §410(c).  Newman did not dispute that his public

reproduction was unauthorized.  Nor did he question the plausibility of the sworn

---

[2] *Universal Communication Systems, Inc. v Lycos*, 478 F.3d 413, 421 (1st Cir. 2007).

allegation that Newman had used his unauthorized reproduction as an integral part of his campaign to defame Monsarrat.

Nonetheless Newman contended this complained-of unauthorized use was permitted by the equitable fair use avoidance defense which as a matter of law he argued was established on the Rule 12(b)(6) record. Key components of Newman's unpleaded, asserted equitable avoidance claim were his conclusory contentions in his legal memorandum that: (i) the purpose of his use was to make an archival record of the discussion group's content on the LiveJournal.com website, and to historically preserve a record of that content on the Dreamwidth.com website; and, (ii) his unauthorized use of Monsarrat's copyrighted work "was necessary to Newman's historical, preservationist purposes." App. 18, 38, 40.

In opposing dismissal of the infringement claim Monsarrat argued Newman's burden to establish his asserted but unpleaded affirmative defense of fair use could not be established on the face of the FAC, even if the Court incorporated Exhibits A through U to the Motion to Dismiss into the FAC by reference. Monsarrat contended Newman's burden of proof necessarily implicated fact issues, including state of mind questions, that could not be resolved on the motion to dismiss record.  Each of these opposing arguments was rejected by the District Court.

Without questioning the plausibility of Monsarrat's sworn allegation that Newman had used Monsarrat's copyright to defame Monsarrat and noting the discussion group's posts "remain[] accessible" on the LiveJournal website, the District Court considered and weighed the four non-exclusive fair use factors listed in the Copyright Act, and the the Rule 12(b)(6) record, and without citation to either the FAC or to any of Newman's Exhibits  which according to Newman Monsarrat would have to introduce to prove his claims,[3] conclusively determined that:

1.  Newman's reproduction was solely for historical and preservationist purposes; and

2.  The nature of the copyrighted work was such that it was not a creative work entitled to broader protection;

3.  While copied as a whole, such use is consistent with Newman's historical and preservationist purposes; and

4.  Finding that because there is no plausible market for  the copyrighted work,there could  be no adverse affect on the market for the work as a result of its reproduction.

---

[3] Incorporating a document into a complaint by reference is not the same as adjudicating  conclusively established facts, pursuant to FRE 201. Yet Newman argued certain characterizations, opinions, hearsay, implications and/or inferences should be gleaned or harvested from those so incorporated documents to satisfy his burden of proof. *See, e.g.,*App. 14-18; App. 105.  In ruling in favor of Newman the District Court didn't merely incorporate certain exhibits by reference into the FAC, but may have implicitly relied on, and  treated as established adjudicative facts, Newman's purported state of mind evidence which he argued should be culled from those exhibits. This was error.

"In sum, because it is clear from the face of the FAC [after incorporating Newman's Exhibits A-U] that three of the four fair use factors favor Newman and that the remaining factor can at best be deemed neutral, the court finds Newman entitled to the fair use defense as a matter of law." Add. 8.

## IV.   SUMMARY OF ARGUMENT

The FAC sets forth facially plausible claims from which the District Court should have drawn a reasonable inference that upon proof of Monsarrat's allegations Newman must be adjudged liable to Monsarrat both for defamation (Count I) and for copyright infringement (Count II).

The FAC plausibly alleged a prima facie cause of action for defamation: (i) the precise words of the defamatory statements, including but not limited to that Monsarrat is a "child molester" and "sexual predator;" (ii) the means of Newman's republication, on the Dreamwidth.com website; and (iii) the approximate dates, on or shortly after April 30, 2017, of Newman's republication on the entirely different internet platform aimed at a new and different audience. App. 9-10 (FAC ¶¶ 16-22).

The District Court implicitly found that the FAC failed to "establish[] that…[Newman] acted as an information content provider with respect to the dissemination of the allegedly defamatory statements." Add. 10.  Ruling that the FAC "fails to plausibly allege that Newman participated in the creation or

17

development of the allegedly defamatory statements," (*id*.) the District Court dismissed Count I for failure to state a claim. Add. 10-11.

The District Court erred in dismissing the defamation claim because the face of the FAC did not establish Newman's immunity pursuant to Section 230 and the District Court erred in implicitly holding that Newman's republication of the defamatory materials, under Massachusetts law constituting a new cause of action, was not a proximate cause of harm to Monsarrat.

As a matter of law Section 230 does not preclude Monsarrat from proceeding with his defamation claim against Newman. Prior to Newman's actions the defamatory content had not appeared on that second intermediary internet platform. It is undisputed that solely in his capacity as an individual user Newman alone published the defamatory content on the Dreamwidth.com website.

The plain language of Section 230(c)(1) bars only those claims that would prohibit a user of the Dreamwidth.com website from being treated as the "publisher or speaker" of content that was provided by "another" content provider. That Newman was not one of the original authors who created and first published the defamatory content on another website is immaterial. Newman may be adjudged the legally responsible "information content provider" of the defamatory content as the FAC plausibly alleges that Newman was materially, indeed solely,

responsible for what makes his posted content on the Dreamwidth.com website unlawful.

So too the FAC clearly alleges a prima facie claim of copyright infringement. Specifically, Monsarrat alleged that: (i) he is both the author of a certain copyrighted work and the registered owner of that work holding a US Copyright Office Registration No. TXu001823219 dated August 16, 2012 for that work; (ii) that within three years of the filing of suit Newman reproduced on the Dreamwidth.com website the copyrighted work without authorization or right to do so; and (iii) did so as integral part of his campaign to defame Monsarrat.  App. 15 (FAC ¶¶ 45-46).

Likewise, the Distict Court erred in dismissing Count II- Copyright Infringement as the FAC did not establish Newman's fair use defense.  On a Rule 12(b)(6) record, the District Court improperly accepted as an established fact Newman's conclusory characterization of the purpose for which without authorization he had reproduced the copyrighted material ("preservation"), summarily concluded that Monsarrat's copyrighted work was not "creative", and implicitly presumed  Newman's actions were in "good faith" despite averments in the verified FAC alleging  Newman's conduct was part of his overall campaign to defame and harass Monsarrat.  In so shifting the standard  of a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the District Court erred.

## V.    ARGUMENT

### A.    Standard of Review.

This Court reviews *de novo* the District Court's construction and application of Section 230 of the CDA. *See Town of Johnston v. Fed. Hous. Fin. Agency*, 765 F. 3d 80, 83 (1st Cir. 2014).  This Court also reviews *de novo* the District Court's decision to dismiss the complaint. *See Ocasio-Hernandez v Fortuno-Burset*, 640 F. 3d 1, 7 (1st Cir. 2011).

### B.    Rule 12(b)(6) Standard.

Under the *Twombly/Iqbal* standard "an adequate complaint must provide fair notice to the defendant[] and state a facially plausible legal claim." *Id*. at  12 (internal quotation omitted). If taking plaintiff's factual allegations as true, "allow[s] the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the claim is facially plausible. *Id.* at 11. The issue before the District Court, and *de novo* before the Court on appeal, is not whether Monsarrat will ultimately prevail on his claims. "It is not for the court to decide, at the pleading stage, which inferences are more plausible than other competing inferences, since those questions are properly left to the factfinder." *Evergreen Partnering Grp., Inc. v. Pactiv Corp*., 720 F.3d 33, 45 (1st Cir. 2013).

Newman did not dispute that the FAC plausibly alleged claims for defamation and copyright infringement.  Newman argued that the District Court

must dismiss both of Monsarrat's claims based on two separate—as yet unpleaded—affirmative defenses neither of which fall within the standard Rule 8(c)(1) boilerplate legal defenses.

First, as to the defamation claim Newman did not dispute that as a user of the Dreamwidth.com website he alone republished a number of *per se* defamatory statements that had been posted several years earlier on the LiveJournal.com website by a number of anonymous posters. Instead, Newman argued that despite the acceptance of Monsarrat's factual allegations as true, he is absolutely immune under Section 230 of the Communications Decency Act, 47 U.S.C. § 230.

With respect to the copyright infringement count, Newman argued that the infringement claim must be dismissed upon application of the fair use doctrine to the face of the FAC.

The fair use affirmative defense "usually present[s] mixed questions of fact and law," as to which Newman bears the burden of proof and necessarily includes an examination of "the propriety of…[his] conduct…[as well as his] good faith and fair dealing" under an equitable weighing of the 17 U.S.C. §107 factors. *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 560, 562-63 (1985).

As explained further below, it was error for the District Court to grant Newman's Motion to Dismiss based upon these unpled affirmative defenses.

21

### C.    Immunity Under the CDA.

#### 1.    The State Law Claim.

There is no question that the material at issue in the FAC is *per se* defamatory.  Under Massachusetts law "[a] statement is 'defamatory' if it could be read as discrediting the plaintiff 'in the minds of any considerable and respectable class of the community.'…A defamatory statement holds the plaintiff up to 'scorn, hatred, ridicule, or contempt.'" *S. Middlesex Opportunity Council v. Town of Framingham*, 752 F. Supp. 2d 85, 114 (D. Mass. 2010) (internal citations omitted). "[T]he imputation of a crime is defamatory *per se*, requiring no proof of special damages." *Phelan v. May Dep't Stores Co.*, 443 Mass. 52, 56; 819 N.E. 2d 550, 554 (Mass. 2004).  See also *Damon v. Moore*, 520 F. 3d. 98, 100 n. 2 (1st Cir. 2008) (statements that: constitute "libel," "charge the plaintiff with a crime" or "may prejudice the plaintiff's profession or business" "are actionable without proof of economic loss").

The cause of action against the speaker accrues, and the three year statute of limitations prescribed by Mass. Gen. Laws. C. 260 § 2A begins to run on the date the defamatory statement is first published by the speaker.  *Flynn v. Associated Press,* 401 Mass. 776, 780 (1988); *Wolsfelt v. Gloucester Times*, 98 Mass. App. Ct. 321, 322; 155 N.E. 3d 737, 740  (2020) (single publication rule applied to "defamatory statement posted on a newspaper's website").  However, "[e]ach time

that libelous matter is communicated by a new person, a new publication has

occurred, which is a separate basis of tort liability." *Restatement (Second) of Torts*

§578 (1977) Liability of Republisher, comment b.  A "republisher of a defamatory

statement is subject to liability as if he had originally published it." *Appleby v.*

*Daily Hampshire Gazette*, 395 Mass. 32, 36; 478 N.E.2d 721, 724 (Mass. 1985),

quoting Restatement (Second) of Torts § 578 (1977).

> Thus, republishing material, editing and reissuing material, or placing
> it in a new form that includes the defamatory material, can create a
> new cause of action, which begins to run on the date of republication.
> See Restatement (Second) of Torts § 577A comment d, at 210 ("the
> single publication rule…does not include separate aggregate
> publications on different occasions").

*Wolsfelt, supra,* 98 Mass. App. Ct.  at 329, 155 N.E. 3d  at 746 (*dicta*).  Here the

original anonymous defamatory statements remain on the LiveJournal.com

website. App. 9 (FAC ¶¶ 13, 17).  There was no allegation that in 2017 any of

those original anonymous posters have said or published anything new to injure

Monsarrat.[4]  Thus, the only cause of any new injury was Newman's conduct of

copying and reposting the defamatory content on a new and separate website.

---

[4] Those 8 or 9 year old statements cannot "be resurrected into a new cause of
action without…[those prior anonymous] person[s]…saying or doing anything to
harm the plaintiff." *Vondra v. Crown Pub. Co.,* No. 012199F, 2002 WL 31379948,
at *4 (Mass. Super. Sept. 12, 2002), aff'd sub nom. *Vondra v. Crown Publ'g Co.,*
61 Mass. App. Ct. 1116, 810 N.E.2d 1291 (2004).

With neither a privilege nor any other avoidance defense evident on the face of the FAC, Newman's Motion to Dismiss should have been denied. Based on the allegations of the FAC Newman could be adjudged liable for republishing the libel even supposing he had added "a truthful preface that" he is only quoting what the prior anonymous LiveJournal posters had stated 8 or 9 years before. *Jones v. Taibbi*, 400 Mass. 786, 792; 512 N.E. 2d 260, 264 (Mass. 1987).

## 2.  Section 230 presents an affirmative defense not established on the 12(b)(6) record.

Enactment of Section 230 was "prompted by a state court case holding…[a passive website] responsible for a libelous message posted" by a third party. *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1163 (9th Cir. 2008). Websites are the "most common interactive computer services" providers. *Id.* at 1162 n. 6.

It is only Newman's conduct in his capacity as a user of the Dreamwidth.com website who republished statements originally posted on another website that was the subject of the FAC.[5]

---

[5] Cf. *Doe v. McMillan*, 412 U.S. 306, 317, 319-20 (1973)(the immunity doctrine for public officials provides no shield unless the volitional publication is sufficiently connected with the proper functioning of the public purpose being served). The publisher of a libel, even the Public Printer and Superintendent of Documents disseminating the congressional record outside of Congress will only be shielded with immunity upon a determination that such publication served a legitimate legislative function. *Id.* at 320-324.

Subsection (f) of Section 230, "Definitions," provides "As used in this section [230]:"

> The term "information content provider" means any person or entity that is responsible, in whole or in part, for the creation <u>or</u> development of information provided through the Internet or any other interactive computer service.

47 U.S.C. §230 (f)(3)(emphasis added).

Subsection (c) is captioned "Protection for 'Good Samaritan' blocking and screening of offensive material." The 1996 statute's subsection 47 U.S.C. §230(c)(1), captioned "Treatment of publisher or speaker," provides:

> No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.

> Section 230

> shields conduct if the defendant (1) 'is a provider or user of an interactive computer service, (2) the claim is based on information provided by another information content provider and (3) the claim would treat [the defendant] as the publisher or speaker of that information.'

*Federal Trade Commission v. LeadClick Media, LLC*, 838 F.3d 158, 173 (2d Cir. 2016) citing and quoting *Universal Communication Systems, Inc. v Lycos*, 478 F.3d 413, 418 (1st Cir. 2007).

Immunity only applies if the user "is not also an information content provider" of the content which gives rise to the underlying claim." *LeadClick,* 838 F.3d at 174.

The Section 230 immunity issue, 47 U.S.C. § 230 (c)(1), presented by this appeal is whether Monsarrat's defamation claim, as pleaded, "treats" Newman "as the publisher or speaker" of content "provided by another…content provider." The FAC unambiguously alleges that Newman alone, in his capacity as a user, posted the defamatory content on the Dreamwidth.com interactive website.

The statute does not define the phrase "treat as a publisher."  Hence this Court must give the words their plain and ordinary meaning guided by "dictionary definitions, interpretations given to the same terms by judicial construction, and the statutory context in which the words are used." *Hernández-Miranda v. Empresas Díaz Massó, Inc*., 651 F.3d 167, 171 (1st Cir. 2011).

A publisher is "one that makes public," or "the reproducer of a work intended for public consumption." *Klayman v. Zuckerberg*, 753 F. 3d 1354, 1359 (D.C. Cir. 2014). The word "treat" may be defined as "to regard and deal with in a specified manner-usually with *as."* Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/treat (visited June 11, 2021). As there is no dictionary definition for the phrase "treat as a publisher," consideration of the statutory phrase's "object and policy," *Gozlon-Peretz v. United States*, 498 U.S. 395, 407 (1991) (quotation omitted), and the phrase's "historical context," *United States v. Yellin*, 272 F. 3d 39, 48 (1st Cir. 2001) is appropriate.

Congress enacted Section 230 in response *to Stratton Oakmont v. Prodigy Services Co.* [1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995)] which held the interactive computer service subject to strict, common law "publisher's liability" for defamatory content posted by any of countless users of its online bulletin boards. *See Federal Trade Commission v. Accusearch, Inc.*, 570 F. 3d 1187, 1195 (10th Cir. 2009). Congress expressly stated its objective and policy: "[T]o preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation." 47 U.S.C. §230(b)(2).

The wording of Section 230(c)(1) is clearly rooted in common law defamation, treating "as publishers" those who participate, either intentionally or negligently, in the communication of a defamatory matter to a person other than the person defamed. *See Restatement (Second) of Torts* §§571, 578, 581; *Zeran v. Am. Online, Inc.*, 129 F. 3d 327, 332 (4th Cir. 1997)( "The term 'publisher' derive[s its] legal significance from the context of defamation law."); *Klayma*n, 753 F. 3d at 1359.

In construing the phrase "treat[] as the publisher or speaker of information provided by another," courts routinely conclude Section 230(c)(1) bars claims seeking to impose liability solely on the basis of the neutral website operator's "exercise of a publisher's traditional editorial functions-such a deciding whether to

withdraw, postpone, or alter content" submitted for posting by a third party.
*Zeran*, 129 F. 3d at 330.  Nonetheless Section 230 provides no "general immunity
deriving from third-party content." *Barnes v. Yahoo!, Inc.,* 570 F. 3d 1096, 1100
(9th Cir. 2009) (as amended (Sept. 28, 2009).

The corellative "or" conjunction in subsection (f)(3) evinces Congress'
intent that a user of a website who did not create or author the content that he posts
to that website is not immune under Section 230(c)(1) if he is "responsible in
whole or in part…for the development of" that defamatory content.  While the
contextual meaning of that liability determinant has been left to the courts, nothing
in Section 230's plain language or its historical context remotely suggests that
Section 230(c)(1) was intended to provide Newman as a user of the interactive
Dreamwidth.com website with an absolute defense to a claim alleging that he is
liable for his intentional or negligent injurious conduct.

In *Universal Communication Systems, Inc. v. Lycos*, 478 F. 3d 413, 420-21
(1st Cir. 2007) this Court rejected the plaintiff's contention that the defendant
website operator "through the construct and operation of its website" had involved
itself in, or provided culpable assistance to, alleged wrongdoing of the website's
users and was therefore  a "developer of the alleged information" without
immunity.

In *Lycos*, the lack of plausible allegations of wrongdoing outside of a traditional neutral internet bulletin board's role necessarily did not call for a judicial construction of the denial of immunity to those having even partial responsibility for "development" of the allegedly unlawful content. As to that interpretive issue this Court merely held that taking the plaintiff's allegations as true "Lycos has done nothing…that might make the misinformation at issue its own, rather than that of 'another information content provider.'" *Id.* at 421.

In 2008 the Ninth Circuit in construing a contextually appropriate definition of the word "develop" to be applied to website operators adopted the so-called "material contribution to activity" test. *Fair Hous. Council of San Fernando Valley v. Roommates.com LLC,* 521 F.3d 1157, 1167-68 (9th Cir. 2008). A purported internet "neutral" intermediary "helps to develop unlawful content" and "falls within the exception to section 230" when its actions "contribute[] materially to the alleged illegality of" the content. *Id.*

Courts have consistently drawn the line at the "crucial distinction between, on the one hand, taking actions (traditional to publishers) that are necessary to the display of unwelcome and actionable content and, on the other hand, responsibility for what makes the displayed content illegal or actionable." *Kimzey v. Yelp! Inc*., 836 F.3d 1263, 1269 n.4 (9th Cir. 2016). Other Circuits have adopted this approach. *See FTC v LeadClick Media LLC*, 838 F. 3d 158, 173-74 (2d Cir. 2016);

29

*FTC. v. Accusearch Inc.*, 570 F.3d 1187, 1198 (10th Cir. 2009) (holding that "development" is broader than "creation" in the context of Section 230 immunity and holding that one who makes content visible or draws it out can be deemed a "content provider" even where such content was created by another).

In *Jones v. Dirty World Entertainment Recordings LLC,* 755 F. 3d 398, 403-04, 415-16 (6th Cir. 2014) the Sixth Circuit "adopt[ed the Ninth Circuit's] material contribution test." *Id.* at 413; and, at 410 ("[W]e interpret the term "development" as referring not merely to augmenting the content generally, but *to materially contributing to its alleged unlawfulness.*") (emphasis original). In *Dirty World,* the website's manager had offered comments about anonymously posted defamatory statements. The plaintiff did not sue the anonymous posters who had authored and provided the defamatory content to the website and did not allege the manager's commentary about the defamatory posts standing alone to be defamatory. *Id*. at 415-16. Nor did the district court hold the manager's comments actionable but found that those comments "effectively ratified and adopted the defamatory third-party post" and thereby developed the defamatory statements, "thus ruling that the CDA did not bar Jones's claims." *Id*. at 416-17.  The Sixth Circuit reversed holding that the manager's comments made after the defamatory material had been posted—which the district court found to have ratified or adopted the actionable speech—"did not materially contribute to the tortious content." *Id.*

Under Massachusetts law Newman has a duty to refrain from republishing to a new audience libelous statements even those authored and originally published by third parties. That Monsarrat cannot, and in his complaint does not, seek recourse for any ongoing harm to him accruing from the continuing publication of the libelous matter on the LiveJournal.com website is immaterial. When Newman copied the defamatory speech from the LiveJournal.com website and in breach of a duty not to do so reposted the misinformation to the separate Dreamwidth.com website, he made it his own. See *Lycos,* 478 F. 3d at 420. It is Newman's actions as a content provider to the Dreamwidth.com website that constitute a breach of a duty and are the proximate cause for what makes the republication actionable. *See Barnes v. Yahoo!, Inc.,* 570 F. 3d 1096, 1101 (9th Cir. 2009) (as amended Sept. 28, 2009).

> what matters is whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another. To put it another way, courts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a "publisher or speaker."

*Id.* at 1102.

Section 230's explicit general public policy statements justifying immunity rests on the passive proffer of a forum, a neutral, electronic bulletin board that "serve[s] as [an] intermediar[y] for other parties' potentially injurious messages." *Lycos*, 478 F.3d at 419 (quotation and citations omitted). "Thus,…[even the neutral

31

website host] remains liable for its own speech." *Id*. Here Monsarrat sued Newman to hold him liable for his own speech he voluntarily, indeed maliciously, published as a user of the Dreamwidth.com website.

### 3.    The District Court's Errors of law.

The District Court's dismissal of Monsarrat's complaint was erroneous as a matter of law.  Monsarrat was not provided fair notice of the alleged factual foundation for  Newman's non-boilerplate affirmative defense of immunity.  In his motion Newman contended that because as a user of the Dreamwidth.com website he had merely "[m]igrat[ed]… [the LiveJournal.com defamatory] comments to a new host site" without "alter[ing] their content" and without thereby "giv[ing] them any defamatory character" he is immune. App. 30. Plaintiffs are not required to plead around a potential affirmative defense. *See Doe v. GTE Corp.,* 347 F. 3d 655, 657 (7th Cir. 2003). Unlike the Seventh Circuit *Doe* plaintiffs, Monsarrat did protest the District Court's allowing Newman to seek judgment on both of his claimed affirmative defenses turning on questions of fact. App. 66, 71, 79-84. Without addressing  Monsarrat's contention that consideration of this non-boilerplate avoidance defense was premature, the District Court improperly ruled Newman had satisfied his burden of proof on his unpleaded avoidance claim.

In dismissing Monsarrat's defamation claim pursuant to Section 230 of the CDA the District Court did not follow the analytical framework this Court set forth in *Lycos*.

First, where the defendant is a user of an "Internet service provider," in this instance the interactive Dreamwidth.com website, the District Court erred in failing to determine whether the particular factual allegations on which Monsarrat's defamation claim is based "treat" Newman "as the publisher or speaker" of the "information," constituting the actionable content, which in fact had been provided by another information content provider. *See Lycos,* 478 F. 3d at 418 (Congress' "policy choice...not to deter harmful online speech through the...route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages"). See also 47 U.S.C. § 230(c)(1). If as in this case the answer is no, then the claim is not barred by Section 230 (c)(1).

In this case there is no basis in the record enabling an inference that Newman was acting in any editorial or intermediary-like capacity on behalf of the Dreamwidth.com website. Indeed the FAC's particular factual allegations do not enable speculation, much less allow an inference, that anyone other than Newman, as a third party user, was a provider of that content to the Dreamwidth.com website.

Yet the District Court implicitly and erroneously ruled that treating Newman as the publisher of actionable speech on the Dreamwidth.com website was based on "information provided by another information content provider." Under such construction of Section 230 anyone could copy libel posted on an obscure website having a small, local neighborhood audience and then—shielded by Section 230— knowingly and maliciously republish the libel on a different website with a worldwide audience. This is not the passive activity that Section 230 was enacted to protect.[6]

Second, the District Court failed to address the actual basis of the defamation claim, namely that by his actions in copying the defamatory statements originally published by several anonymous users of the LiveJournal.com website and then posting a compilation of those copied statements on a different website, aimed at a fundamentally different audience, Newman was materially, if not solely, responsible for what makes his posted content on the Dreamwidth.com

---

[6] We note that while Newman summarily contends he was merely "providing a home for" LiveJournal.com content by "archiving" those several posts on the Dreamwidth.com website, the 12(b)(6) record does not enable speculation, much less require an inference, that Newman had any ownership rights to the several defamatory statements on the LiveJournal.com website. There is no evidence on the 12(b)(6) record as to what control the original author-posters of the defamatory content had over each statement once posted on the LiveJournal.com website, *e.g.* could a poster have deleted it from that website? That should discovery reveal the original LiveJournal.com posters might choose to delete their posts, will provide grist for the jury's consideration of Newman's motive and malice.

website unlawful.  Instead, without questioning the plausibility of Monsarrat's allegations and without meaningful consideration of the Ninth Circuit's material contribution test cited by Monsarrat, the District Court implicitly, and erroneously, found: (i) Newman had not "acted as an information content provider with respect to the dissemination of the allegedly defamatory statements;" and, (ii) there was no plausible allegation Newman "had participated in the…development of the" purportedly actionable content.[7]

  In considering dismissal the District Court purported to focus on the central question of whether or not Newman, who had not created or authored any of the defamatory statements originally posted on the LiveJournal.com website, was in fact a content provider of that content on the Dreamwidth.com website: one who as a user of the Dreamwith.com platform had "participated in the creation or development of the allegedly defamatory statements." Add. 10.

The District Court acknowledged the theory of the defamation claim was that by copying the defamatory statements originally published by several anonymous users of the LiveJournal.com website and then posting a compilation of those copied statements on a different website, aimed at a fundamentally

---

[7] As a moderator of a discussion group hosted by the LiveJournal.com website Newman was akin to a security guard at an art museum; he had no greater right to remove the content of others from the LiveJournal.com website and then repost to the Dreamwidth.com website than a security guard would to remove the artwork and hang it at another museum.

different audience,  Newman was materially, if not solely, responsible for what makes the content he alone had posted on  the Dreamwidth.com website unlawful. Add. 10-11.  But without questioning the plausibility of Monsarrat's allegations and without meaningful consideration of the Ninth Circuit's material contribution test cited by Monsarrat, the District Court implicitly and erroneously: (i) found Newman had not "acted as an information content provider with respect to the dissemination of the allegedly defamatory statements;" and, (ii) ruled there was no plausible allegation Newman "had participated in the… development of the" purportedly actionable content. *Id*.  In this case of first impression, the District Court then erred in holding Monsarrat's theory that Newman's republication in 2017 on the Dreamwidth.com website of "a compilation of copies of…defamatory statements published many years ago" on a different website and, which as the District Court noted, still remain published on that first website, "is no basis on which the court can impose liability."  Add. 11.[8]

While the defamation claim unambiguously targeted Newman's conduct in his role as a third party user of, and provider of content to, the Dreamwidth.com website the District Court, in a case of first impression, granted Newman a

---

[8] It is also worthy of note that this republication transformed libelous statements that were no longer actionable due to the passage of the statute of limitations for such claims under Massachusetts law, into actionable statements. Thus, Newman "developed" these statements into unlawful statements.

judgment of immunity in reliance on distinguishable precedents, cited by Newman, each predicated on Congress' expressed policy and purpose of protecting internet intermediaries.

The District Court's holding explicitly relied on  *Ayyadurai v. Floor64, Inc.,* 270 F. Supp. 3d 343, 368 (D. Mass. 2017); *Kimzey v. Yelp! Inc.,* 836 F. 3d 1263, 1268 (9th Cir. 2016); and, *Jones v. Dirty World Entm't Recordings LLC*, 755 F. 3d 398, 415-417 (6th Cir. 2014).

 Quoting *Ayyadurai* the District Court explained "republishing an already-existing user-submitted comment, without altering the content of that comment, does not materially contribute to its allegedly defamatory nature."  Add. 11. In *Ayyadurai*, however, both the original allegedly unlawful content and the republication was on the very same website.  Monsarrat's complaint plainly alleges that by his actions in copying defamatory content originally posted by a number of users on the LiveJournal.com website and then republishing those defamatory statements on the different Dreamwidth.com website Newman had made the actionable "misinformation at issue …[his] own rather than that of 'another information content provider.'" *Lycos*, 478 F.3d  at 421.

In *Ayyadurai,* the Techdirt.com website published 14 allegedly defamatory articles about the plaintiff, some authored by third party users, some anonymous, and included one article that had been posted by the defendant Beadon, who was

"alleged to operate or write for a website called 'Techdirt.'" 270 F. Supp. 3d at

349-51.  Beadon's article "consist[ed] primarily of" his reposting of a selection of

the comments posted on that same website by others "along with some

commentary by Beadon." *Id.* at 351.  Ayyadurai sued Beadon for defamation

seeking to hold him liable for "content originally created by third-party users" and

not for Beadon's "minor editorializing comments" on the allegedly defamatory

statements. *Id*. at 367. Beadon was not alleged to have taken the defamatory

statements and republished them on a different website, to a different audience.

Rather, all of the content that he used was provided by others and stayed within the

Techdirt website.

Because Beadon bore no responsibilty for what made the alleged defamatory

statements published on the Techdirt.com website unlawful, upon application of

the Ninth Circuit's material contribution standard to the allegations of the

complaint,  Judge Saylor dismissed the defamation claim.

> Applying those principles here, it is clear that Beadon was neither the
> "creator" nor "developer" of the statements at issue. Beadon simply
> selected a user-submitted comment and re-posted it, without
> modifying the content of the comment. Republishing an already-
> existing user-submitted comment, without altering the content of that
> comment, does not materially contribute to its allegedly defamatory
> nature. While Beadon arguably adopted or ratified the comments by
> selecting them for re-publication, "[a]n adoption or ratification theory
> ... is not only inconsistent with the material contribution standard of
> 'development' but also abuses the concept of responsibility. A website
> operator cannot be responsible for what makes another party's
> statement actionable by commenting on that statement *post hoc"*

*Jones* , <u>755 F.3d at 415</u>. Accordingly, the defamation claim based on Beadon's article is barred by the CDA.

*Id.* at 368.  *Kimzey v. Yelp! Inc.,* 836 F. 3d 1263, 1268 (9th Cir. 2016) is inapposite as the *pro se* plaintiff locksmith's attempts to plead around Section 230 and hold the Yelp.com website liable for  two negative reviews posted on Yelp's website by the plaintiff's customer were rejected. Likewise *Jones v. Dirty World Entm't Recordings LLC*, 755 F. 3d 398, 415-417 (6th Cir. 2014) is off point. *See* discussion *supra* at 24-25.

As alleged in the FAC,  Newman didn't simply summarize or repost on the same website the defamatory statements which the original anonymous users had created and then posted.  Instead acting in his individual capacity as a publisher in his own right, Newman re-posted the defamatory statements on a separate website with a different audience thereby exposing Monsarrat to the harm of a new and fresher audience consuming the defamatory materials.  As a matter of law such republication constitutes "a separate basis of tort liability." *Restatement (Second) of Torts* §578; *Appleby v. Daily Hampshire Gazette*, 395 Mass. 32, 36, 478 N.E.2d 721, 724 (Mass. 1985).  Thus, by his very publication of the content to a new audience on new website, Newman not only contributed to its unlawfulness, he made it in fact unlawful as per se defamation published by him.[9]

---

[9] "[E]ven under the single publication rule…[a newspaper's] website may be republished and create a new cause of action for defamation if the website is

**D.    Copyright Infringement Claim.**

The  FAC plausibly states a cause of action of copyright  infringement. *Johnson v. Gordon*, 409 F.3d 12, 17 (1st Cir. 2005). It alleges that: (i) Monsarrat is both the author of a certain two paragraph copyrighted work and the registered owner of that literarywork holding a US Copyright Office Registration No. TXu001823219 dated August 16, 2012 for that work. App. 15 (FAC ¶45); (ii) that "[o]n or shortly after April 30, 2017, without permission, consent or right to do so, Defendant reproduced and published on Dreamwidth Plaintiff's said copyright;" App. 15 (FAC ¶46); and (iii) did so "as an integral part of Defendant's defamatory statements falsely accusing the Plaintiff of despicable crimes." App. 6 (FAC ¶1). The motion to dismiss record, as Newman points out (App. 21, 35) and as the District Court's memorandum of decision evinces, Add. 4,  the work was first published on February 6, 2010 some two years plus before the August 16, 2012 registration.  Hence for purposes of this motion to dismiss the registered copyright is presumptively valid. 17 U.S.C. § 410 (c).

---

substantially modified…Republication triggers the start of a new statute of limitations and occurs upon a separate aggregate publication from the original, on a different occasion, which is not merely a delayed circulation of the original edition…"It is clear that justification for [the holding that a republication of a print article to a website that is substantially modified extends the statute of limitation] is that the second publication is intended to and does reach a new audience." *Atkinson v. McLaughlin*, 462 F. Supp. 2d 1038, 1052 (D. N.D. 2006) (internal citations omitted).

In seeking dismissal of the copyright infringement claim Newman did not contest any of the factual or legal components of Monsarrat's prima facie case. Nor did Newman present any sworn affidavits or any evidence of adjudicative facts. Instead Newman contended his unathorized use was protected by the affirmative defense of fair use and that his burden of proof was evident from the face of the operative complaint.

Fair use is an avoidance "affirmative defense" as to which the alleged infringer has the burden of proof. *Soc'y of the Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 59 (2012). Because "fair use presupposes 'good faith' and 'fair dealing,'" *Harper & Row*, 471 U.S. at 562–63, whether the alleged infringer demonstrates an equitable basis to avoid liability presents a mixed question of fact and law in assessing and weighing the four non-exclusive 17 U.S.C. § 107 factors viewed through the Chancellor's lenses. *Id.* at 560-61.[10] "In evaluating character and purpose [of a defendant's use]" a District Court should

---

[10] *Id.* at 560-61 (citations omitted):

The factors enumerated in the section are not meant to be exclusive: "[S]ince the doctrine is an equitable rule of reason, no generally applicable definition is possible, and each case raising the question must be decided on its own facts."… The four factors identified by Congress as especially relevant in determining whether the use was fair are: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the substantiality of the portion used in relation to the copyrighted work as a whole; (4) the effect on the potential market for or value of the copyrighted work.

not ignore a defendant's *"intended purpose"*; and should consider "a]lso…the

propriety of the defendant's conduct… . Fair use presupposes good faith and fair

dealing." *Id*. at 562-63 (emphasis original).

The four statutory factors "may [not] be treated in isolation,…[a]ll are to be

explored, and the results weighed together…". *Campbell v. Acuff-Rose Music, Inc.*,

510 U.S. 569, 578 (1994).

> As the Supreme Court and Congress have insisted, fair use calls for a
> case-by-case analysis that attends to a range of equitable
> considerations in light of the ends of the copyright law[s]…Since the
> doctrine is an equitable rule of reason, no generally applicable
> definition is possible, and each case raising the question must be
> decided on its own facts.

*Sony BMG Music Entertainment v. Tenenbaum*, 672 F. Supp. 2d 217, 238 (D.

Mass. 2009)(citations and quotations omitted).

While in limited appropriate cases the fair use defense might be raised in a

motion to dismiss, its adjudication "involve[s] a more detailed analysis of the facts

at issue and are best resolved by summary judgment or adjudication at trial."[11] *Id.*

at 220 n.2 (quotations and citations omitted).

Where the fair use defense relies on outcome determinative factual

conclusions as to, among others, the infringer's good faith, intent and equitable

---

[11] While granting summary judgment that on the fully developed undisputed facts the defendant's filing sharing use did not "assert a plausible fair use defense," Judge Gertner assumed without deciding "that fair use is jury question." *Id*. at 223-24. (internal citations omitted).

purposes and Newman's contended "transformative" purpose of preservation and historical archiving on the Dreamwidth.com website of the LiveJournal.com content which still remains on the latter website, unpled conclusory allegations should provide no weight on the fair use scales.

In support of his fair use defense, Newman relied on purported conclusory "facts" that while wholly outside of the FAC, even after incorporating by reference his Exhibits A through U, were outcome determinative. Without questioning the plausibility of Monsarrat's sworn allegation that Newman's unauthorized use was an integral part of Newman's campaign to defame Monsarrat, Newman's motion necessarily contended his intent, good faith, motivation passed equitable muster and each was evident from the face of the complaint. Newman summarily contended a primary "purpose and character" of his use was the preservation and historical archiving on the Dreamwidth.com website of the LiveJournal.com content yet that content remains on the latter website. In opposition Monsarrat contended Newman was improperly and prematurely seeking an adjudication of "factual issues necessary to support his purported, but as yet unpled, affirmative defenses." App. 66.

The District Court committed prejudicial error granting Newman judgment on his fair use defense without requiring Newman to provide some minimal due process detailing or explanation of his factual contentions in support of his

conclusory, outcome determinative fair use predicates as to his good faith, intent and equitable purposes including his contended "transformative" purpose of preservation and historical archiving.

The District Court erred in its summary assessment of the four non-exclusive statutory fair use factors without discovery and further development of the record. Further the District Court made erroneous determinations on three of the statutory factors.

### 1.     First Statutory Factor Purpose and Character of the Use.

With respect to the first statutory factor "the purpose and character of the use" Newman contended in a summary fashion that his use "had a noncommercial purpose and transformative character." App. 37.  Specifically Newman contended his purpose was  to "preserve the [copyrighted work]…in an archival, non-commercial record," (App. 18) and that reproduction of the complete work "was necessary to Newman's historical, preservationist purposes." App. 40.   In weighing this factor, the District Court accepted Newman's conclusory contention of his purpose.[12]

> [I]t is clear from the face of the FAC (and from the plain text of the post and its reproduction, *see* Exs. G and H to Def.'s Mot. to Dismiss; *see also* FAC ¶¶ 45-46), that Newman did not publish the copyrighted post for the same purposes for which Monsarrat initially created it… Monsarrat submitted the original post to highlight LiveJournal's

---

[12] See also note 6 *supra*.

harassment policy and demand deletion of other posts on the
community website which he viewed as violative. The Dreamwidth
reproduction, on the other hand, was solely for historical and
preservationist purposes…

Add. 4-5.

Even assuming that it was proper for the District Court to conclude that

Newman realized no economic benefit from his unauthorized reproduction on

Dreamwidth, there is no "<u>evidentiary</u> presumption of fair use for all private or not-

for-profit uses." *Sony BMG Music Entertainment v. Tenenbaum*, 672 F. Supp. 2d at

226 (emphasis original); *The Holy Transfig. Monastery v. Archbishop Gregory*,

685 F. Supp. 2d 217, 227 (D. Mass. 2010) aff'd sub nom *Soc'y of the Holy*

*Transfiguration Monastery, Inc. v. Archbishop Gregory,* 689 F. 3d 29 (1st Cir.

2012) (that alleged infringer's asserted use is not commercial is not dispositive).

Indeed "removing money from the equation does not, under copyright law, remove

liability…". *Id.* at 61.

While acknowledging that he is alleged to have used his unauthorized

reproduction "as an integral part of…[his] defamatory statements," (App. 6 (FAC ¶

1), 31), Newman introduced no evidence of his state of mind, the fairness of his

conduct and/or his good faith.

From the face of the complaint any preliminary view of the character and

purpose factor weighs against fair use. There is no proper basis in the Rule

12(b)(6) record enabling a finding as to the purpose of Newman's unauthorized use

other than in furtherance of Newman's campaign to defame the owner of the copyright. "In evaluating character and purpose [of a defendant's use]" the District Court "should not have ignore[d Newman's alleged] *intended purpose*" and should have also considered "the propriety of… [his] conduct. Fair use presupposes good faith and fair dealing." *Harper & Row,* 471 U.S. at 562-63.

So in ruling that Newman's use was "solely for historical and preservationist purposes," the District Court essentially flipped the 12(b)(6) standard on its head. The District Court's summary conclusion on the Rule 12(b)(6) record that the sole purpose of the reproduction by Newman was for "historical and preservationist purposes" is clear error and cannot stand. The assessment and weight of Newman's good faith in order to determine Newman's motivation(s) and hence purpose(s) served by his unauthorized use should have been left to the fact finder, not to the District Court on a Rule 12(b)(6) record.

And this purported preservationist purpose is belied by the record fact that all the original content remains preserved on the LiveJournal.com website.

So as to the first statutory fair use factor, without questioning the plausibility of Monsarrat's sworn allegation that Newman had used Monsarrat's copyright as an integral part of his campaign to defame Monsarrat, where it is undisputed all the original content remains preserved on the LiveJournal.com website, the District Court without any adjudicative facts in the record requiring such inference, erred

by summarily finding Newman's reproduction to have been "created solely for historical and preservationist purposes[.]"  On this record the first factor weighs in Monsarrat's favor.

### 2.    Second statutory factor "nature of the copyrighted work"

The District Court found that the two paragraph copyrighted post simply repeated the LiveJournal.com  harassment policy and warned users to delete their posts in light of such policy, and as such that it was not a "creative work," thus finding that the second statutory factor weighed in Newman's favor. Add. 9. The level of creativity necessary to counter this discretionary factor  is extremely low. *See Feist Publications, Inc. v. Rural Tel. Service Co.,* 499 U.S. 340, 345 (1991) ("To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice"); *Folsom v. Marsh*, 9 F. Cas. 342 (Circuit Court, D. Mass. 1841), 1841 US App. LEXIS 468 ** 7, 8 (Story, J.) ("[i]n one sense, all letters are literary, for they consist of the thoughts and language of the writer reduced to written characters, and show his style and his mode of constructing sentences, and his habits of composition.").  Any determination on this 12(b)(6) record, if not improper for want of any consideration of the markers and indicia of a literary work, is premature.

### 3.    Third statutory factor: amount and substantiality of use.

While fair use is not precluded, "copying an entire work generally will militate against a finding of fair use." *Holy Transfiguration,* 689 F. 3d at 62. Newman contended the third statutory factor was neutral because his verbatim copying "was necessary to…[his] historical preservationist purposes." App. 40. In lock step with Newman, the District Court ruled Newman's "full reproduction" of Monsarrat's work to be "consistent with historical and preservationist purposes" and hence determined the third factor neutral and did not weigh toward a finding of fair use or against a finding of fair use. Add. 7. The District Court's finding that Newman's unauthorized use was "solely for historical and preservationist purposes," cannot stand. The FAC alleges Newman's use was an integral part of his campaign to defame Monsarrat. On this record where the unauthorized reproduction of the entire copyrighted work furthers commission of a tort and where the LiveJournal.com content in fact remains preserved on that website, in equity the third factor tips in Monsarrat's favor.

### 4.    Fourth statutory factor: effect on the market or the value of the copyright.

The fourth factor is "the effect of the use upon the potential market for <u>or</u> value of the copyrighted work." 17 U.S.C. § 107(4)(emphasis added). In seeking dismissal Newman ignored the statute's correlative conjunction "or," and contended this fourth statutory factor "weighs strongly" in his favor because there

is no market for Monsarrat's work and hence no "likelihood of significant market harm." App. 41.  The District Court agreed and determined "[t]here is no plausible market for the copyrighted post and thus no likelihood Newman's reproduction could have any harmful market consequences," to Monsarrat's copyright. Add. 6. Hence, the District Court ruled "the single most important element of fair use," weighs against Monsarrat. *Id.*

The District Court's finding and ruling on the fourth statutory factor constitutes error as a matter of law. That there is no plausible market for Monsarrat's copyrighted two paragraph post is immaterial.

Monsarrat has a longstanding fundamental property right, indeed under the Copyright Act the sole and exclusive right, to preclude Newman from reproducing the post. 17 U.S.C. § 106(1).  See *Folsom v. Marsh*, 9 F. Cas. 342 (Circuit Court, D. Mass. 1841), 1841 US App. LEXIS 468. Whether or not

> "susceptible of being literary," and "whether…[Monsarrat's post is a] literary composition[]¹³,… or details…facts, or [is a] letter[] of business…the general property in the…[post] remains in [Monsarrat as] the writer" as well as the general copyright… The Copyright act…gives…the author…the sole right to print and publish the same…[and to preclude by Court order] the publication thereof, by any person or persons, without his consent…Even in compositions confessedly literary, the author may not intend, nay, often does not intend them for publication; and yet, no one on that account doubts his

---

¹³ As Justice Story adds that "[i]n one sense, all letters are literary, for they consist of the thoughts and language of the writer reduced to written characters, and show his style and his mode of constructing sentences, and his habits of composition." *Id*. at **7, 8.

right of property therein as a subject of value to himself and to his posterity.

*Id*. at **8, 9. As Justice Story held in this seminal fair use case

> [t]he author of any letter or letters, (and his representatives,) whether they are literary compositions, or familiar letters, or letters of business, possess the sole and exclusive copyright therein; and that no persons, neither those to whom they are addressed, nor other persons, have any right or authority to publish the same upon their own account, or for their own benefit.

*Id*. at 9.

This Court acknowledges the significance of the correlative

conjunction of the fourth statutory factor.

> But the fourth factor of the fair use inquiry cannot be reduced to strictly monetary terms. Statutory law expressly states that it considers not only the impact of a work's use on the potential market, but also its effect on the "*value of the copyrighted work*."

*Holy Transfiguration,* 689 F. 3d at 64. (emphasis original).

On this Rule 12(b)(6) record the value to Monsarrat to preclude the use of

his copyright to defame him, tilts the fourth factor in his favor.

### 5. Propriety of Newman's Conduct cannot be determined on a 12(b)(6) record.

While on the Rule 12(b)(6) record the District Court determined fair use as a

matter of law, Supreme Court and First Circuit precedent mandates that the fact

finder assess "the propriety of…[Newman's] conduct" and whether in equity

Newman acted in good faith. *Harper & Row*, 471 U.S. at 562–63.

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff-Appellant Jonathan Monsarrat

respectfully requests the Court to reverse  the judgment of the District Court.

Respectfully submitted,

JONATHAN MONSARRAT,
Plaintiff-Appellant

by his attorneys,

Dated: June 22, 2021

*/s/ Richard A. Goren*
Richard A. Goren, Esq. BBO #203700
Law Office of Richard Goren
29 Crafts Street
Newton, MA
617-933-9494
rgoren@richardgorenlaw.com


*/s/ Ryan D. Sullivan*
Ryan D. Sullivan (BBO#660696)
Sullivan Legal, PC
29 Farragut Road, Suite E
South Boston, MA 02127
617-410-6340
ryan@sullivan-legal.com

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

### Certificate of Compliance with Type-Volume Limitation, Typeface Requirement, and Type Style Requirements

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(a)(B) because this brief contains 11,503 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).


2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:  this brief has been prepared in a proportionally spaced typeface using Microsoft Word Times New Roman 14 point font.


_____*/s/ Richard A. Goren*_____
Richard A. Goren, Esq.

*Attorney for Plaintiff-Appellant*


Dated:  June 22, 2021

## <u>CERTIFICATE OF FILING AND SERVICE</u>

  I, Elissa Diaz, hereby certify pursuant to Fed. R. App. P. 25(d) that, on

June 22, 2021, the foregoing Brief for Plaintiff-Appellant was filed through the

CM/ECF system and served electronically.


Daniel G. Booth
Ste 121
60 Thoreau St
Concord, MA 01742-2411

*Attorney for Defendant Appellee, Ron Newman*



<u>/s/ Elissa Diaz</u>
 Elissa Diaz

ADDENDUM

Table of Contents

| Page | Date of Document | D. Court ECF # | Description |
|------|------------------|----------------|-------------|
| 1 | 1/21/21 | 30 | Memorandum and Order on Defendant's Motion to Dismiss |
| 13 | 1/21/21 | 31 | Judgment (Stearns, D.J.) |

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 20-10810-RGS

JONATHAN MONSARRAT

v.

RON NEWMAN

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO DISMISS

January 21, 2021

STEARNS, D.J.

Plaintiff Jonathan Monsarrat brings this action against Ron Newman,

alleging copyright infringement and defamation.  Newman moves to dismiss

the case for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  For

the following reasons, the court will <u>ALLOW</u> defendant's motion.

## BACKGROUND

The essential facts, drawn from the First Amended Complaint (FAC)

(Dkt # 9) and the material documents incorporated by reference,[1] as viewed

---

[1] Monsarrat moves to strike or seal the exhibits that Newman offers
with his motion to dismiss.  *See* Pl.'s Opp'n to Req. for Jud. Notice and Mot.
to Strike (Dkt # 21).  While the court is not convinced that the documents
excerpted from Monsarrat's 2013 and 2017 lawsuits have any material
bearing on its resolution of the instant motion, the court declines to strike or
seal these documents because they are matters of public record and are
incorporated by reference in the FAC.  *See* FAC ¶¶ 11-12, 14, 26, 29-31.  The

in the light most favorable to the plaintiff as the nonmoving party, are as follows. On April 4, 2017, the social networking site LiveJournal revised its terms and conditions of service to comply with Russian law. Because Russian law permitted censorship of certain content, Newman, the moderator of a Davis Square (Somerville, MA)-specific LiveJournal community, decided to move the group to Dreamwidth, a social networking site that was not subject to Russian censorship. On April 30, 2017, Newman copied every post from the Davis Square LiveJournal community to Dreamwidth. Monsarrat filed suit in this court on April 28, 2020, asserting claims of copyright infringement and defamation related to the republication of these posts. Newman moved to dismiss on December 14, 2020.

## DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp.*

---

court also declines to strike or seal the Wikipedia entries for LiveJournal and or Dreamwidth, both of which are directly cited by the FAC. *See id.* ¶¶ 7, 18. Finally, the court declines to strike or seal the Dreamwidth post reproductions or the original copyrighted LiveJournal post. The FAC refers to these posts in several paragraphs, *see id.* ¶¶ 8, 10, 16, 20-21, 45-46, and Monsarrat concedes in his opposition that they form the basis of (and thus are necessary to a proper evaluation of) his claims, *see* Pl.'s Opp'n to Def.'s Mot. to Dismiss at 8, 10, 16 (Dkt # 20).

2

*v. Twombly*, 550 U.S. 544, 570 (2007).  Two basic principles guide the court's analysis.  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.*  "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 679.  A claim is facially plausible if its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.

### a. Copyright Infringement

Monsarrat raises a copyright infringement claim against Newman involving the republication of a comment he originally posted in the Davis Square LiveJournal community in 2010, reproduced below.



**Violation of LiveJournal abuse policies**
make_you_laugh
February 6 2010, 21:03:40 UTC

LiveJournal's abuse policies are at http://www.livejournal.com/abuse/policy.bml

Under the section "Harassment", it says that "If a user makes a statement which encourages or incites others to harass another person in any way, access to that content will be disabled. This can also extend to entries in which harassment has not been explicitly called for, but is implied, at the discretion of the Abuse Prevention Team."

This is it. I'll give everyone here until Monday at 12pm to remove your comments from this board. At that point, I'm collecting every single one of them. I have already filed an abuse report with LiveJournal but won't call them until Monday at 12pm.

Ex. G to Def.'s Mot. to Dismiss at 2; *see also* FAC ¶ 45.  Monsarrat asserts that Newman's reproduction of this post on Dreamwidth in 2017 infringed his intellectual property rights and entitles him to damages.  Newman

contends that Monsarrat has failed to state an actionable claim because the allegations in the FAC establish his entitlement to a fair use defense.

"Fair use 'creates a privilege for others to use the copyrighted material in a reasonable manner despite the lack of the owner's consent.'" *Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 59 (1st Cir. 2012), quoting *Weissmann v. Freeman*, 868 F.2d 1313, 1323 (2d Cir. 1989). The Copyright Act codifies four non-exclusive factors relevant to the fair use inquiry:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.

Here, drawing all reasonable inferences in Monsarrat's favor, the court agrees that the FAC establishes Newman's entitlement to a fair use defense as a matter of law. As to the first factor, it is clear from the face of the FAC (and from the plain text of the post and its reproduction, *see* Exs. G and H to Def.'s Mot. to Dismiss; *see also* FAC ¶¶ 45-46), that Newman did not publish

the copyrighted post for the same purposes for which Monsarrat initially created it. *See Gregory*, 689 F.3d at 59-60 (considering as part of the first factor "whether and to what extent the new work is transformative, that is, whether the new work merely supersedes the objects of the original creation or whether it adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message" (internal quotation marks omitted)), quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994). Monsarrat submitted the original post to highlight LiveJournal's harassment policy and demand deletion of other posts on the community website which he viewed as violative. The Dreamwidth reproduction, on the other hand, was created solely for historical and preservationist purposes. *See Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 609 (2d Cir. 2006) (finding that the use of concert posters in a book on the history of the Grateful Dead served a different purpose than the original purpose of "artistic expression and promotion" because defendant used the concert posters "as historical artifacts to document and represent the actual occurrence of Grateful Dead concert events"); *Stern v. Does*, 978 F. Supp. 2d 1031, 1045 (C.D. Cal. 2011), *aff'd on other grounds sub nom. Stern v. Weinstein*, 512 F. App'x 701 (9th Cir. 2013) (finding that defendants' forwarding by email of a copyrighted

5

post "conveyed the fact of the post rather than its underlying message" and "thus had a substantially different purpose than the post itself"); *cf. Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 819 (9th Cir. 2003) (finding that the use of artistic images in thumbnail form "serve[d] a different function" than "artistic expression" because the thumbnails were simply meant to "improv[e] access to information on the internet"). Monsarrat's post, moreover, was just one of several hundred posts copied by Newman and was not used to promote traffic to the new website.[2] *See Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985) (noting that "[t]he crux" of the analysis is "whether the user stands to profit from exploitation of the copyrighted material without paying the customary price"); *cf. Haberman v. Hustler Mag., Inc.*, 626 F. Supp. 201, 211 (D. Mass. 1986) (finding that the first factor did not militate strongly against fair use where a magazine reproducing plaintiff's postcards "did not exploit the value of [his] works in order to sell copies of its magazine" but instead reproduced the works "as items inside the magazine in a regular feature section").

---

[2] Posts on Dreamwidth in 2017 may have included references to the reproduced post (and may have even hyperlinked to it), but there is no allegation that the post itself was used to promote traffic to the Dreamwidth community.

6

Turning to the second factor, the "nature of the copyrighted work," the balance again tips in Newman's favor.  The post largely repeats the LiveJournal harassment policy, a factual matter, and the court cannot reasonably infer under these circumstances that the warning in the final paragraph, for contributors to delete their posts in light of this policy, transformed otherwise factual matter into "a creative work enjoying broader copyright protection."  *See Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 23 (1st Cir. 2000).  In any event, the post was published on a public forum, so the "right of first publication" is not implicated.  *See id.*

The third factor, "the amount and substantiality of the portion used in relation to the copyrighted work as a whole," "focus[es] upon whether the extent of . . . copying is consistent with or more than necessary to further the purpose and character of the use."  *Id.* at 24 (internal quotation marks and citations omitted); *see also Haberman*, 626 F. Supp. at 212 ("[I]t has long been recognized that a commentator may fairly reproduce as much of the original, copyrighted work as is necessary to his proper purpose.").  This factor is neutral.  Newman copied Monsarrat's post in full, but a full reproduction is consistent with historical and preservationist purposes.

Finally, the fourth factor, "the effect of the use upon the potential market for or value of the copyrighted work" − "the single most important

element of fair use," *Harper & Row*, 471 U.S. at 566 – weighs against Monsarrat.  There is no plausible market for the copyrighted post and thus no likelih0od that Newman's reproduction could have any harmful market consequences.  *See Gregory*, 689 F.3d at 64 (noting that the fourth factor requires the court "to consider both (1) the degree of market harm caused by the alleged infringer's actions, and (2) 'whether unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in a substantially adverse impact on the potential market for the original'" (alterations in original)), quoting *Campbell*, 510 U.S. at 590.

In sum, because it is clear from the face of the FAC that three out of the four fair use factors favor Newman and that the remaining factor can at best be deemed neutral, the court finds Newman entitled to the fair use defense as a matter of law.  It accordingly allows the motion to dismiss the copyright infringement claim.

### b. Defamation

Monsarrat also raises a defamation claim against Newman based on his republication of certain posts from the Davis Square LiveJournal community on Dreamwidth.  Newman argues that the Communications Decency Act (CDA), 47 U.S.C. § 230, bars this claim.

Section 230 of the CDA provides, in relevant part, that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider" and that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." §§ 230(c)(1), 230(e)(3).  Because immunity under Section 230 is an affirmative defense for which Newman bears the burden of proof, the court may only grant his motion to dismiss if his entitlement to the defense is apparent from the face of the FAC.  *See Small Justice LLC v. Xcentric Ventures LLC*, 873 F.3d 313, 322 (1st Cir. 2017).  In other words, the factual allegations in the FAC must definitively establish that (1) Newman "is a 'provider or user of an interactive computer service'; (2) the claim is based on 'information provided by another information content provider'; and (3) the claim would treat [Newman] 'as the publisher or speaker' of that information."  *See Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 418 (1st Cir. 2007).

The FAC pleads that Newman is a user of an interactive computer service,[3] *see* FAC ¶¶ 18, 20, and the defamation claim indisputably seeks to

---

[3] Monsarrat implies that qualification as a provider or user of an interactive computer service is inconsistent with qualification as an information content provider.  *See* Pl.'s Opp'n to Def.'s Mot. to Dismiss at 8.

9

treat Newman as the publisher of the cited statements. Newman's entitlement to immunity thus hinges on whether the complaint establishes that he acted as an information content provider with respect to the dissemination of the allegedly defamatory statements.

An "information content provider" is "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). Here, Monsarrat fails to plausibly allege that Newman participated in the creation or development of the allegedly defamatory statements. Indeed, in his opposition, he concedes that "Newman did not originally compose or write any of the original defamatory statements" but instead merely "copie[d] . . . defamatory statements published many years ago." Pl.'s Opp'n to Def.'s Mot. to Dismiss at 11; *see also* FAC ¶¶ 8, 10, 16, 20-21. His argument for liability relies on Newman having taken "ownership of the collection of defamatory speech" by republishing the statements on "an entirely different website." *See* FAC ¶ 23;

---

But these are separate inquiries. Nothing prevents a provider or user of an interactive computer service from also serving as an information content provider with respect to certain statements. *See*, *e.g.*, *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1125 (9th Cir. 2003). The CDA merely states that the provider or user of an interactive computer service is not entitled to immunity if it acts as an information content provider.

10

*see also* Pl.'s Opp'n to Def.'s Mot. to Dismiss at 11 ("In his 2017 post on the Dreamwidth website it was Newman alone who voluntarily provided the content, *i.e.*, a compilation of copies of those defamatory statements published many years ago.").  But this is no basis on which the court can impose liability.[4]   As another session of this court recently observed, "[r]epublishing an already-existing user-submitted comment, without altering the content of that comment, does not materially contribute to its allegedly defamatory nature."  *See Ayyadurai v. Floor64, Inc.*, 270 F. Supp. 3d 343, 368 (D. Mass. 2017); *see also Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1268 (9th Cir. 2016) (granting a motion to dismiss where "[a] careful reading of the complaint reveals that Kimzey never specifically alleged that Yelp authored or created the content of the statements posted under the aegis of Sarah K, but rather that Yelp adopted them from another website and transformed them into its own stylized promotions on Yelp and Google"); *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 415-417 (6th Cir. 2014) (finding that a website operator did not become an information content provider of allegedly defamatory statements provided by third parties merely by publishing those statements on his website).  The court

---

[4] That the posts remained accessible on LiveJournal has no bearing on the court's analysis.

accordingly allows the motion to dismiss Monsarrat's defamation claim under the CDA.

**ORDER**

For the foregoing reasons, the motion to dismiss is <u>ALLOWED</u>.  The Clerk will enter judgment for defendant Newman and close the case.

SO ORDERED.

<u>/s/ Richard G. Stearns</u>
UNITED STATES DISTRICT JUDGE

12

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

Jonathan Monsarrat

      Plaintiff

      v.                             CIVIL ACTION 1:20-10810-RGS

Ron Newman

      Defendant

## JUDGMENT

<u>STEARNS, D.J.</u>

      In accordance with the court's Memorandum and Order issued on January 21, 2021, granting defendant's Motion to Dismiss, it is hereby ORDERED:

      Judgment entered for defendant Ron Newman.

                                 By the court,

<u>January 21, 2021</u>                             /s/ Arnold Pacho
Date                                       Deputy Clerk